UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.:

SPRINT SPECTRUM LIMITED PARTNERSHIP )
)
Plaintiff, )
)
v. )
)
CITY OF LAWRENCE, MASSACHUSETTS, )
ZONING BOARD OF APPEALS of the CITY )
OF LAWRENCE, and FRANCIS AUDY, )
RICHARD CONSOLI, GAYLE WILLIAMS, )
JOSEPH SIROIS, APRIL LYSKOWSKY, )
KEMAL BOZKURT, AND RICKY SPELLER, )
as they are voting and associate voting members )
of the Zoning Board of Appeals, )
)
Defendants. )
)

04 - 10813 GAO
MAGISTRATE JUDGE _____

RECEIPT # 55482
AMOUNT $ 150
SUMMONS ISSUED ___
LOCAL RULE 4.1 ___
WAIVER FORM ___
MCF ISSUED ___
BY DPTY. CLK. ___
DATE 4-23-04

## COMPLAINT

1.  Plaintiff Sprint Spectrum Limited Partnership ("Sprint"), hereby appeals under both federal and state law from the denial by the Zoning Board of Appeals of the City of Lawrence, Massachusetts (the "Board"), of Sprint's application for a Special Permit (the "Application") to "co-locate" a Sprint antenna on an existing 100-foot cellular phone "monopole[1]" tower currently used by another wireless provider, Nextel Communications of the Mid-Atlantic, Inc. (the "Nextel Tower")[2]. The Nextel Tower is located at 672 South Union

---

[1] In the early days of telecommunications, when co-location was relatively unheard of, most wireless service providers built single-carrier poles which accommodated only their individual capacity requirements. With increased demand for cost-effective tower capacity, "monopole" towers have emerged which provide opportunity for more than one wireless service provider to install an antenna on the monopole tower.

[2] Upon information and belief, Nextel recently transferred ownership of the Nextel Tower to SpectraSite Communications, Inc. Despite this transfer, Nextel continues to use the monopole tower for its own wireless communications services.

Street, Lawrence, Massachusetts, which is in an I-2 Zoning District. Attached hereto as Exhibit 1 is a certified copy of the Board's decision filed with the City Clerk of Lawrence, Massachusetts, on April 4, 2004 (the "Decision").

2.  Sprint seeks relief pursuant to Section 704 of the Telecommunications Act of 1996, Pub. L. No. 104-104 (the "Telecommunications Act"), codified at Section 332(c)(7) of the Communications Act of 1934, 47 U.S.C. §§ 151-691, and the Massachusetts Zoning Act, M.G.L. c. 40A, § 17.

## JURISDICTION

3.  This Court has subject matter jurisdiction over this action pursuant to: (a) Section 332(c)(7)(B)(5) of the Telecommunications Act, because Sprint has been adversely affected and aggrieved by the Board's denial of its application for Special Permit, and (b) 28 U.S.C. § 1331 because this action presents a federal question under the Telecommunications Act. This action may be brought pursuant to the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 (the Declaratory Judgment statute) because an actual controversy exists. The Court has supplemental jurisdiction over the Massachusetts state law claims pursuant to 28 U.S.C. § 1367.

4.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Sprint's claims arose in this judicial district.

## THE PARTIES

5.  Plaintiff Sprint Spectrum Limited Partnership is a Delaware limited partnership qualified to do business in Massachusetts and having a business address of 6391 Sprint Parkway, Overland Park, Kansas. Sprint is licensed by the Federal Communications Commission to provide wireless mobile communication service in areas which include Lawrence, Massachusetts.

6.  Upon information and belief, the Defendant City of Lawrence, Massachusetts (the "City"), is a duly constituted municipal corporation of the Commonwealth of Massachusetts, with a place of business at City Hall, 200 Common Street, Lawrence, Massachusetts 01840.

7.  Upon information and belief, the Defendant Board is a duly constituted board of the City with an office at City Council Chambers, City Hall, 200 Common Street, Lawrence, Massachusetts.

8.  Upon information and belief, the Defendant Francis A. Audy is the Chairman of the Board and resides at 641 Lowell Street, Lawrence, Massachusetts 01841.

9.  Upon information and belief, the Defendant Richard Consoli is a Voting Member of the Board and resides at 51 Stearns Avenue, Lawrence, Massachusetts 01841.

10. Upon information and belief, the Defendant Gayle Williams is a Voting Member of the Board and resides at 37 Hillside Avenue, Lawrence, Massachusetts 01841.

11. Upon information and belief, the Defendant Joseph Sirois is a Voting Member of the Board and resides at 9 Belknap Street, Lawrence, Massachusetts 01843.

12. Upon information and belief, the Defendant April Lyskowsky is a Voting Member of the Board and resides at 1 Currier Street, Lawrence, Massachusetts 01841.

13. Upon information and belief, the Defendant Kemal Bozkurt is an Associate Voting Member of the Board and resides at 6 Diamond Street, Lawrence, Massachusetts 01843

14. Upon information and belief, the Defendant Ricky Speller is an Associate Voting Member of the Board and resides at 19 North Boylston Street, Lawrence, Massachusetts 01841.

15. According to the Decision, Defendants Audy, Consoli, Williams, Sirois, and Bozkurt rendered the decision at issue in this case.

## THE NEED FOR ADDITIONAL
## COVERAGE IN LAWRENCE, MASSACHUSETTS

16. Sprint's wireless communication system is digital, meaning that once a user goes beyond the area covered by one of Sprint's antennae (*i.e.*, receivers), the communication services are unavailable. This is a drawback for users of a system that otherwise offers clarity and quality of communication. In order to minimize or eliminate the occurrence of these communications drop-offs, Sprint refers to maps to determine areas of coverage. When an area not covered is identified on the map, Sprint attempts to locate an antenna within that area to link adjoining areas of coverage.

17. Sprint currently has four wireless communication sites in Lawrence. These existing sites are not capable of providing complete coverage throughout Lawrence or to the Coverage Gap (as defined below), especially in light of the size of the City.

18. Sprint currently has a significant gap in its wireless communications services in Lawrence (including portions of Lawrence near the Nextel Tower, Interstate 495, Route 28, and Route 133) and in its so called "in-building" coverage, which term refers to continuous cellular coverage while a caller is physically located in a building or structure (collectively, the "Coverage Gap"). The Coverage Gap area is located in a high-demand area.

19. Sprint's proposed co-location of a Sprint antenna on the pre-existing 100-foot monopole Nextel Tower would provide wireless communications services in the area of the Coverage Gap, as well as to the surrounding areas.

20. None of Sprint's existing sites in or near Lawrence provides, or is capable of providing, adequate coverage to the Coverage Gap.

21. Other wireless carriers have gaps in their coverage of this particular area too. Upon information and belief, T-mobile is currently preparing an application to submit to the Board which proposes to co-locate one of its own T-mobile antennas on the Nextel Tower.

## THE ZONING ORDINANCE
## OF THE CITY OF LAWRENCE

22. In Lawrence, wireless communications facilities and equipment, such as the co-location antenna proposed by Sprint, are allowed by Special Permit under Section 29-11 B of the City of Lawrence Revised Zoning Ordinance (the "Ordinance"), subject to Section 29-17 of the Ordinance.

23. Section 29-11 of the Ordinance contains a "Use Table." Section B of the Use Table regulates commercial uses. The particular use category described in Section B as "Telephone exchange building, electric sub-station, or other similar public facility (§29-23 q)," provides that in an I-2 District (which is a General Industrial District[3]), such as that wherein the Nextel Tower is located, an "SPSR" (or Special Permit) is required for this use. Section 29-11 B of the Ordinance defines "SPSR" as "[s]pecial permit by Board of Appeals with site plan review by the Planning Board pursuant to Articles VII and VIII."

24. Under the Ordinance, in order to issue a Special Permit, the Board must make the following four findings:

"(1) The traffic generated by the use will not be detrimental to the neighborhood.
(2) The use will not be detrimental to the area in which it is to be located.
(3) The use will not result in any objectionable fumes, noise, chemical spills or hazardous wastes.

---

[3] Section 29-10 of the Ordinance defines "General Industrial Districts," or I-2 Districts, as those districts which "permit the most intense industrial uses of the City in an environment whereby the uses are safe, healthy, and pleasant and do not impact upon other uses permitted within the general industrial district or with other uses permitted in other surrounding districts in the City."

(4) The hours of operation are compatible with the uses in the neighborhood."

Section 29-21(a) of Ordinance ("Special Permit Findings").

25.  In addition to the above four findings, the Board must make so-called "specific findings per use," as set forth in Section 29-23 of the Ordinance. Section 29-23(q) of the Ordinance (entitled "Supplemental Regulations for Permitted and Special Permits Uses") requires two "use requirement" findings for "Public transit passenger stations, telephone exchange buildings, electrical substation, and other similar public facilities." These use requirement findings are:

> "(1) There [must be] an acceptable buffer, either fenced or landscaped, around all boundaries of the premises.
>
> (2) All trucks and delivery vehicles shall be out of view and screened from abutting properties."

26.  Section 29-17(2)(f) of the Ordinance provides:

> "(f) Co-Location
>
> *(1) Design For Co-Location: All* telecommunications and wireless facilities shall be designed structurally, electrically, and in all other respects to accommodate both the applicant's antennae and comparable antennae for at least two additional users if the telecommunications and wireless facility is over 80 feet in height, or for at least one additional user if the tower is over 60 feet in height,
>
> *(2) Review Procedure For Co-Location:* The co-location of additional antennae on an existing telecommunications and wireless facility shall require a Special Permit. With the Special Permit review process, the Zoning Board of Appeals may limit the number of users to be located on a tower. Co-Location shall not require a site plan except if any one of the following is met:
>
> An additional equipment building is proposed.
>
> A.  The additional antennas require an increase in the height or bulk of the telecommunications tower structure.
>
> B.  The additional antenna and any associated accessory structures require the removal of trees or understory vegetation.

*(3) Co-Location Requirements:* A proposal for a new telecommunications or wireless service tower or facility shall not be approved unless the Zoning Board finds that the telecommunications equipment planned for the proposed tower cannot be accommodated on an existing or approved tower or facility which will meet the needs of the facility due to one or more of the following reasons:

**A.** The planned equipment would exceed the structural capacity of the existing or approved tower or facility, as documented by a qualified and licensed professional engineer, and the existing or approved tower cannot be reinforced, modified, or replaced to accommodate planned or equivalent equipment at a reasonable cost.

**B.** The planned equipment would cause interference materially impacting the usability of other existing or planned equipment at the tower or facility as documented by a qualified and licensed professional, engineer and the interference cannot be prevented at a reasonable cost.

**C.** Existing or approved towers and facilities within the area cannot accommodate the planned equipment at a height, necessary to function reasonably, as documented by a qualified and licensed professional engineer.

**D.** Other unforeseen reasons that make it infeasible to locate the planned telecommunications equipment upon an existing or approved tower or facility."

## ATTEMPTS TO LOCATE A COMPLYING SITE

27.     To address its Coverage Gap, Sprint considered exploring the possibility of installing its antenna at alternative sites and existing tall structures. The pre-existing, functioning, 100-foot <u>monopole</u> tower (which by definition is <u>intended</u> to accommodate more than one provider's antennae) right in the Coverage Gap, however, provided the ideal solution.

28.     Installing an antenna on a pre-existing monopole, rather than constructing an entirely new, free-standing, single-pole or monopole tower at another location within the Coverage Gap is in the best interest of the City. Quite simply, the proposed co-location is preferable to new construction. It is more advantageous to both wireless communication carriers and the City to have cellular communication towers consolidated (on monopole towers), rather than peppered throughout the City on single-pole towers.

29. Sprint's equipment will look exactly like the existing Nextel equipment. Sprint's equipment would require low maintenance by a technician who would only visit the tower once a month.

30. Furthermore, the Nextel Tower is in an ideal location for Sprint's antenna because of its proximity to Interstate 495, its site lines, and the fact that the Nextel Tower is located within a general industrial district.

## THE PROPOSED SITE AND CO-LOCATION

31. Sprint concluded that co-locating (or sharing) the existing 100-foot Nextel Tower would satisfy Sprint's need to cover the Coverage Gap and that the co-location approach would be the most compatible with the Ordinance and nature of the industrial district in which the Nextel Tower is located.

32. By way of background, in 1997, Nextel had successfully petitioned the Board for zoning relief, including a variance which allowed it to construct and operate a monopole tower. A true and accurate copy of that 1997 decision (the "1997 Nextel Decision") is attached as Exhibit 2. In that Decision, the Board imposed the following six conditions:

> "1. The installation of any additional antenna arrays or the addition of another mobile communications carrier to the monopole antenna shall require further review by the ZBA.
>
> 2. An evergreen hedge of sufficient height to block the shed shall be installed along the perimeter. No barbed wire shall be used at the site.
>
> 3. The exterior of the equipment shelter shall consist of brown aggregate with stone, so as to blend into a background of trees and shrubbery.
>
> 4. If a light or strobe is required, a cone-up configuration shall be installed, if possible, to deflect light from the adjoining residential areas.
>
> 5. Any security lighting on the site will be designed to shield the adjacent uses from glare.

6. Any air conditioning, heating, cooling and/or ventilating fans will provide silent operation and not disturb abutting residential uses."

Nextel has complied with these six conditions.

33. In connection with its co-location proposal on the Nextel Tower, Sprint prepared drawings showing a Survey Plan, a Site Plan and Elevation, and Site Details. A true and accurate copy of the same is attached as Exhibit 3. These items were submitted to the Board.

34. As shown on the plans, Sprint proposes to install a Sprint antenna array consisting of nine antennae and a concrete pad located at the base of the tower for related equipment. The proposed antennae would be mounted to the existing 100-foot Nextel Tower that already houses Nextel antennae. Sprint's related equipment will be located on a 9' x 18' concrete pad and will consist of two battery and radio boxes.

35. Sprint's proposed use is completely passive and unobtrusive, requires no employees or customers on the premises, and has no characteristics that are incompatible with nearby properties.

36. As required by the conditions imposed by the Board in the 1997 Nextel Decision, the Nextel Tower is buffered by an existing evergreen hedge of sufficient height to block the shed at the property. The exterior of the equipment shelter consists of brown aggregate with stone, so as to blend into a background of the surrounding trees and shrubbery.

37. Sprint has entered into an agreement with the owner of the Nextel Tower to lease space on the monopole tower.

## THE PROCEEDINGS BEFORE THE BOARD

38. In December 2003, Sprint applied to the Lawrence Commission of Buildings for approval of Sprint's co-location plan on the existing 100-foot Nextel Tower. On December 31,

2003, J. Robert Quimby, Lawrence Commissioner of Buildings denied Sprint's application on the grounds that a Special Permit was required from the Zoning Board of Appeals.

39.   On January 7, 2004, Sprint submitted an application for a Special Permit to the Lawrence Zoning Board of Appeals to allow its proposed co-location plan.

40.   In its application, Sprint indicated that a site plan review was required pursuant to Section 29-11 of the Ordinance and that its plan had been submitted to the Lawrence Land Use Planner for review.

41.   Sprint attached to its application a "permit package" relating to, *inter alia*, building permits related to this location.

42.   In its application, Sprint satisfied all of the requirements for a Special Permit under the Ordinance and the Zoning Act, M.G.L. c. 40A, § 10, particularly in light of the Federal Telecommunications Act of 1996.

43.   On January 29, 2004, the Board held a public hearing, after publishing and mailing a public notice referring to the application for a Special Permit.

44.   Sprint was represented at the public hearing by its agent, Daniel M. Schweigard. Mr. Schweigard described the Nextel Tower site and Sprint's proposed co-location plan. He explained that Sprint proposed to install an antenna array (consisting of nine antennae) and a concrete pad to be located at the base of the Nextel Tower for its related equipment. Mr. Schweigard described the proposed antenna array as being mounted to the existing 100-foot monopole Nextel Tower that already housed an antenna of Sprint's competitor, Nextel. He indicated that Sprint's equipment would look exactly like Nextel's existing equipment.

45.   Mr. Schweigard indicated that Sprint's proposed co-location was preferred over new construction and explained why.

46. Mr. Schweigard explained that the proposed antenna was necessary to provide adequate cellular communication service to the public in accordance with Sprint's obligation as a licensee under the FCC.

47. The public hearing was continued until February 26, 2004.

48. At the February 26, 2004, hearing, Mr. Schweigard appeared along with Sprint's radio frequency expert, Raymond Kim.

49. Sprint presented the expert testimony of Mr. Kim, who gave a professional opinion on the site location and the height of the antennas as being necessary to address the Coverage Gap. Using a radio frequency map, Mr. Kim explained how data had been collected, identified areas of "dropped calls," and explained how the area of proposed enhanced coverage that would adequately address the Coverage Gap.

50. Sprint also presented evidence on the structural design of the Nextel Tower and the safety of monopoles and antennas. Testimony was presented to the effect that the antenna site and antenna were safe and that the proposed installation was structurally safe and non-intrusive to the neighborhood in light of the fact it was a co-location proposal using an existing tower.

51. Sprint also presented evidence relating to the requirements and issues set forth in Section 29-17(2)(f) of the Ordinance.

52. No expert testimony was presented against the application.

53. After closing the hearing, the Board voted unanimously to deny the application.

54. The Board filed its Decision denying the application with the City Clerk of Lawrence, Massachusetts, on April 4, 2004.

55. The Board stated in its Decision, among other things, that it had denied Sprint's application for Special Permit because Sprint was:

"unable to make all four findings that:

(1) the traffic generated by the use will not be detrimental to the neighborhood;

(2) the use will not be detrimental to the area in which it is to be located;

(3) the use will not result in any objectionable fumes, noise, chemical spills or hazardous wastes and

(4) the hours of operation are compatible with the uses in the neighborhood."

56. Despite the evidence presented by Sprint, the only factual finding the Board made with respect to the issue of traffic expected to be generated by the co-location proposal was that "The equipment requires low maintenance by a technician who will visit the installation once each month." (Exhibit 1, page 2, of Decision).

57. Despite the evidence presented by Sprint, the Board did not make any findings with respect to how the proposed co-location of Sprint's antenna along side Nextel's existing antenna would be "detrimental to the area in which it [was] to be located."

58. Despite the evidence presented by Sprint, the Board did not make any findings with respect to how the proposed co-location of Sprint's antenna along side Nextel's existing antenna would "result in any objectionable fumes, noise, chemical spills or hazardous wastes."

59. Despite the evidence presented by Sprint, the Board did not make any findings with respect to how the "hours of operation" or the antenna would or would not be "compatible with the uses in the neighborhood."

60. Despite the evidence presented by Sprint, the Board did not make any findings with respect to there being "an acceptable buffer, either fenced or landscaped, around all boundaries of the premises."

61. Despite the evidence presented by Sprint, the Board did not make any findings with respect to "trucks and delivery vehicles [being] out of view and screened from abutting properties."

62. Despite the evidence presented by Sprint, the Board did not make any of the other findings with respect to Section 29-17(2)(f) of the Ordinance.

## THE TELECOMMUNICATIONS ACT OF 1996

63. Congress has determined that there is a public need for wireless communications services, such as those provided by Sprint. The Telecommunications Act was intended to "provide for a pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies to all Americans." *Omnipoint Communications MB Operations, LLC, v. Town of Lincoln*, 107 F. Supp.2d 108, 114 (D. Mass. 2000) (citations and internal quotations omitted).

64. The Telecommunications Act, while preserving certain state and local authority over the placement, construction, or modification of wireless facilities, expressly preempts state or local governments from regulating such facilities in a manner that prohibits or has the effect of prohibiting the provision of personal wireless services, or from unreasonably discriminating among providers of functionally equivalent wireless services. The Telecommunications Act also requires that the decisions of state or local governments concerning any requests for authorization to place, construct, or modify wireless facilities must be supported by "substantial evidence."

## IRREPARABLE HARM

65. By denying Sprint the right to co-locate its antenna and equipment at the existing Nextel Tower, the Board has effectively prohibited Sprint from covering a particular portion of

the City of Lawrence. Furthermore, the Board previously granted a variance to Nextel to locate its own wireless communication monopole tower in this area, which allows Nextel to provide coverage to this portion of Lawrence. By its actions, the Board has violated the Telecommunications Act's restriction against unlawfully discrimination against a wireless communication provider.

66. As a result, Sprint has suffered and continues to suffer irreparable harm by being denied and delayed the opportunity to install and operate its antenna and to compete with the other federally-licensed carriers in Lawrence, such as Nextel and T-Mobile.

67. By denying Sprint the right to install and operate its antenna at the Site, the Board has effectively prohibited Sprint from providing wireless communications service to this portion of Lawrence.

68. As a result, Sprint contends that it has suffered and continues to suffer irreparable harm by being denied and delayed the opportunity to install and operate its antenna on the Nextel Tower and to compete with other federally-licensed carriers in Lawrence, such as Nextel and T-Mobile.

## COUNT I
### (Telecommunications Act of 1996 – Effective Prohibition)

69. Sprint repeats and realleges the allegations of paragraphs 1-68, above.

70. The Telecommunications Act provides in relevant part that "The regulation of the placement, construction, and modification of personal wireless service facilities by any State of local government or instrumentality thereof . . . (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i).

71. The Board's denial of Sprint's Application "prohibit[s] or ha[s] the effect of prohibiting the provision of personal wireless services" in those areas of Lawrence in the

Coverage Gap that cannot receive wireless communication coverage if Sprint's co-location antenna is not installed, in violation of Section 332(c)(7)(B)(i)(II) of the Act.

72. The Ordinance as applied by the Board's denial of Sprint's Application "prohibit[s] or ha[s] the effect of prohibiting the provision of personal wireless services," in those areas of the City that cannot receive wireless communication coverage if the proposed antenna is not installed, in violation of Section 332(c)(7)(B)(i)(II) of the Act.

73. The Court should declare that the Board's Decision and the Ordinance, as applied by the Decision, is in violation of the prohibition of § 332(c)(7)(B)(i) on their face and as applied.

## COUNT II
### (Telecommunications Act of 1996 – No Substantial Evidence for Denial)

74. Sprint repeats and realleges the allegations of paragraphs 1-73, above.

75. The Telecommunications Act provides that "Any decision by a state or local government or instrumentality thereof to deny a request to place, construction, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii).

76. The Board's denial of Sprint's Application is not supported by substantial evidence, in violation of this requirement.

## COUNT III
### (Chapter 40A, Section 17)

77. Sprint repeats and realleges the allegations of paragraphs 1-76.

78. The Board's denial of Sprint's Application was arbitrary and capricious, exceeded the Board's authority under Massachusetts General Laws Chapter 40A, and was based on errors of law, and should be annulled.

## COUNT IV
### (Declaratory Judgment)

79. Sprint repeats and realleges the allegations of paragraphs 1-78, above.

80. There is an actual controversy between the parties as to whether "the traffic generated by the use" will not be detrimental to the neighborhood surrounding the Nextel Tower, whether "the use will not be detrimental to the area in which it is to be located," whether "the use will not result in any objectionable fumes, noise, chemical spills or hazardous wastes," whether "the hours of operation are compatible with the uses in the neighborhood," whether there was "an acceptable buffer, either fenced or landscaped, around all boundaries of the premises," whether "trucks and delivery vehicles [would be] be out of view and screened from abutting properties," whether the other relevant criteria and requirements were met, and whether Sprint's Application could lawfully be denied.

81. Resolution of this controversy between the parties by the Court will have a real and concrete impact upon the delivery of wireless communications services to a portion of the City of Lawrence.

82. Sprint's contentions on these points are correct.

WHEREFORE, Sprint requests that this Court enter judgment:

1. Declaring that the Board's Decision and the Ordinance as applied by the Board's Decision violates the Telecommunications Act and the Zoning Act;

2. Granting temporary, preliminary, and permanent injunctive relief ordering that Sprint be permitted immediately to install its antenna and equipment in accordance with its application and co-location plans therefore;

3. Annulling that portion of the Board's Decision denying Sprint's Application;

4. Ordering the Board to issue all zoning relief necessary for the proposed co-location plan;

5. Awarding Sprint reasonable attorneys' fees and costs; and

6. Awarding Sprint such other and further relief as the Court deems just and proper.

PLAINTIFF
SPRINT SPECTRUM LIMITED PARTNERSHIP
By its attorneys,

Kevin P. Joyce, BBO # 567291
Leigh-Ann M. Patterson, BBO # 561901
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110
(617) 345-1000

Dated: April 23, 2004