UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.: 04-10813 GAO

SPRINT SPECTRUM LIMITED PARTNERSHIP )
          Plaintiff, )
v. )
  )
CITY OF LAWRENCE, MASSACHUSETTS, )
ZONING BOARD OF APPEALS of the CITY )
OF LAWRENCE, and FRANCIS AUDY, )
RICHARD CONSOLI, GAYLE WILLIAMS, )
JOSEPH SIROIS, APRIL LYSKOWSKY, )
KEMAL BOZKURT, AND RICKY SPELLER, )
as they are voting and associate voting members )
of the Zoning Board of Appeals, )
          Defendants. )

## STIPULATION

Pursuant to Local Rule 16.1(C), the parties, by their undersigned counsel, have conferred on the subject of settlement and have agreed to enter into this Stipulation.

1. Plaintiff Sprint Spectrum Limited Partnership ("Sprint"), has appealed under both federal and state law from the denial by the Defendant Zoning Board of Appeals of the City of Lawrence, Massachusetts (the "Board"), of Sprint's application for a Special Permit (the "Application") to "co-locate" a Sprint antenna on an existing 100-foot cellular phone "monopole" tower currently used by another wireless provider, Nextel Communications of the Mid-Atlantic, Inc. (the "Nextel Tower"). The Nextel Tower is located at 672 South Union Street, Lawrence, Massachusetts, which is in an I-2 Zoning District.

2. Sprint has sought relief pursuant to Section 704 of the Telecommunications Act of 1996, Pub. L. No. 104-104, codified at Section 332(c)(7) of the Communications Act of 1934, 47 U.S.C. §§ 151-691, and the Massachusetts Zoning Act, M.G.L. c. 40A, § 17.

3. The Board filed its decision with the City Clerk of Lawrence, Massachusetts, on April 4, 2004, (the "Sprint Decision"), a copy of which is attached as Exhibit 1.

4. Thereafter, the Board approved the application of another wireless provider, Omnipoint Holdings, Inc., to "co-locate" its antenna on the Nextel Tower (the "Omnipoint Decision"), a copy of which is attached as Exhibit 2.

5. In light of the Omnipoint Decision, and in view of the evidence presented to the Board by Sprint, it is stipulated that the Board made deficient legal and factual findings in the Sprint Decision, but that such deficient findings may be remediable at a further hearing.

6. It is stipulated that the Decision will be remanded to the Board for consideration at its meeting on November 18, 2004, so that appropriate findings may be made. A revised decision from the Board shall be issued by December 17, 2004, and the parties shall file a status report with the Court by December 20, 2004.

7. In its revised Decision, the Board shall incorporate all factual findings relating to the Nextel Tower and the property on which it is located which appeared in the OmniPoint Decision. Furthermore, the Board shall issue specific findings relative to the following issues, plus any others required by Section 29-17(o) of the City of Lawrence Revised Zoning Ordinance:

   (a) the traffic generated by the use not being detrimental to the neighborhood – the Board will consider the evidence presented by Sprint that the only traffic generated by the use will be one vehicle visit per month by a technician who will perform routine maintenance. The Board made an initial reference to this evidence on page two of the Sprint Decision wherein it stated that: "The

equipment requires low maintenance by a technician who will visit the installation once each month."

(b) the use not being detrimental to the area in which it is to be located – the Board will consider the evidence presented by Sprint, as well as the Board's finding in the OmniPoint Decision that a co-location use "will not be detrimental to the area in which it is to be located."

(c) the use will not result in any objectionable fumes, noise, chemical spills or hazardous wastes – the Board will consider the evidence presented by Sprint, as well as the Board's finding in the OmniPoint Decision that a co-location use "will not result in any objectionable fumes, noise, chemical spills or hazardous wastes."

(d) the hours of operation are compatible with the uses in the neighborhood – the Board will consider the evidence presented by Sprint, as well as the Board's finding in the OmniPoint Decision that the hours of operation for a co-location use "are compatible with the uses in the neighborhood."

(e) there being an acceptable buffer, either fenced or landscaped, around all boundaries of the premises – the Board will consider the evidence presented by Sprint, as well as the Board's finding in the OmniPoint Decision that OmniPoint "shall be responsible for the design, installation, construction of security fencing at the site," which shall serve as a buffer around all boundaries of the premises.

(f) all trucks and delivery vehicles being out of view and screened from abutting properties – the Board will consider the evidence presented by Sprint that the only traffic generated by the use will be one vehicle visit per month by a technician who will perform routine maintenance. The Board made an initial reference to

this evidence on page two of the Sprint Decision wherein it stated that: "The equipment requires low maintenance by a technician who will visit the installation once each month."

8. It is stipulated that this Court shall retain jurisdiction of this matter during the above-referenced remand and that if Sprint is aggrieved by the revised decision that Sprint does need not to file a new lawsuit to challenge said decision.

9. This Stipulation shall be binding in this action, as well as in the concurrent state court action captioned *Sprint Spectrum Limited Partnership v. City of Lawrence*, C.A. 04-773D, pending in Essex Superior Court.

| | |
|---|---|
| SPRINT SPECTRUM LIMITED PARTNERSHIP<br>Plaintiff,<br>By its attorney,<br><br>_____<br>Leigh-Ann M. Patterson, BBO #561901<br>NIXON PEABODY LLP<br>100 Summer Street<br>Boston, MA 02110<br>(617) 345-1258<br><br>Dated: October 27, 2004 | CITY OF LAWRENCE, MA, ZONING BOARD OF APPEALS of the CITY OF LAWRENCE, and FRANCIS AUDY, RICHARD CONSOLI, GAYLE WILLIAMS, JOSEPH SIROIS, APRIL LYSKOWSKY, KEMAL BOZKURT, AND RICKY SPELLER, as they are voting and associate voting members of the Zoning Board of Appeals,<br>Defendants.<br>By their attorneys,<br><br>_____<br>Charles D. Boddy, Jr., City Attorney<br>BBO #551197<br>Anne L. Randazzo, Asst. City Attorney<br>BBO #411670<br>200 Common Street<br>City Hall – Room 306<br>Lawrence, MA 01840 |

**ZONING BOARD
OF APPEALS**

*Voting Members*
Richard P. Consoli  Gayle Williams
April Lyskowsky  Joseph F. Sirois
*Associate Voting Members*
Ricky Speller    Kemal Bozkurt



*Chairman*
*Francis A. Audy*

**LAWRENCE
MASSACHUSETTS**

*Administrative Assistant*
Anne-Marie Nyhan-Doherty
*Land Use Planner*
William J. Maloney

RECEIVED
APR 05 2004
CITY CLERK

**NOTICE OF DECISION**

| | |
|---|---|
| CASE NO. | 3132 |
| DATE OF HEARING: | February 26, 2004 (continued from January 29, 2004) |
| PETITIONER: | Sprint Spectrum, LLP, 6580 Sprint Parkway, Overland Park, KS |
| PREMISES AFFECTED: | 672 South Union St. |

**Referring to:** The above request for a Special Permit in accordance with Section 29-11(B) subject to Section 29-17(2)(f) of the Revised Zoning Ordinances of the City of Lawrence for a permit for a co-location to an existing wireless tower of a proposed wireless facility. The property is located in an I-2 zoning district.

After a public hearing on the above-mentioned date, the Zoning Board voted to deny the request as described above. Appeals to this decision shall be made pursuant to MGL Chapter 40A, Section 17, and shall be filed within twenty days after the filing date of this notice in the office of the City Clerk.

THIS DECISION WAS FILED WITH THE CITY CLERK ON  4/5/04  .

Signed:

_____
FRANCIS A. AUDY
CHAIRMAN

_____
RICHARD CONSOLI
VOTING MEMBER

_____
GAYLE E. WILLIAMS
VOTING MEMBER

_____
JOSEPH SIROIS
VOTING MEMBER

_____
KEMAL BOZKURT
ASSOCIATE VOTING MEMBER

**ZONING BOARD
OF APPEALS**

*Voting Members*
Richard P. Consoli  Gayle Williams
April Lyskowsky  Joseph F. Sirois
*Associate Voting Members*
Ricky Speller    Kemal Bozkurt



*Chairman*
*Francis A. Audy*

**LAWRENCE
MASSACHUSETTS**

*Administrative Assistant*
Anne-Marie Nyhan-Doherty
*Land Use Planner*
William J. Maloney

## STATEMENT OF FACTS

| | |
|---|---|
| **CASE NO.** | 3132 |
| **DATE OF HEARING:** | February 26, 2004 (continued from January 29, 2004) |
| **PETITIONER:** | Sprint Spectrum, LLP, 6580 Sprint Parkway, Overland Park, KS |
| **PREMISES AFFECTED:** | 672 South Union St. |

A meeting of the Zoning Board of Appeals was held in the City Council Chambers, City Hall, 200 Common St., Lawrence, MA, commencing at 7:00 PM on February 26, 2004. Present and voting on this application were Francis A. Audy, Chairman, Richard Consoli and Gayle Williams and Joseph Sirois, Voting Members and Kemal Bozkurt, Associate Voting Member.

Pursuant to public notice in the Lawrence Eagle Tribune, a newspaper of general circulation in the City of Lawrence, published on January 15th and 22nd and pursuant to notice sent by mail, postage prepaid to the petitioner and owners of all property deemed by the Board to be affected thereby, as they appear on the most recent tax list, a public hearing was held on the application of Sprint Spectrum, LLP. The property is located in an I-2 zoning district.

On December 31, 2003, J. Robert Quimby, Commissioner of Buildings for the City of Lawrence denied Sprint Spectrum, LLP, the Petitioner, approval of a plan for co-location to an existing wireless tower of a proposed wireless facility on a parcel known as 672 South Union Street which is located in a I-2 district. The Commissioner determined that a Special Permit is required from the Zoning Board of Appeals under section 29-11B of the Ordinance subject to Section 29-17 (2)(f) of the Revised Zoning Ordinance.

At a meeting of the Zoning Board of Appeals held on January 29, 2004, the Petitioner was represented by Daniel M. Schweigard. He told to the Board that what Sprint proposes is the installation of an antenna array consisting of 9 antennae and a concrete pad located at the base of the tower for related equipment in order to provide improved wireless service to the area around the tower.

According to the Petitioner's representative, the proposed antennae will be mounted to an existing 101-foot monopole that already houses Nextel antennae (permitted by vote of the Zoning Board of Appeals on December 18, 1997). The related equipment will be located on a 9' x 18' concrete pad and will consist of two battery and radio boxes.

Mr. Schweigard explained that co-location is preferred to new construction and that the new equipment will look exactly like the existing Nextel installation. The equipment requires low maintenance by a technician who will visit the installation once each month.

The Board was advised that presently there is a gap in coverage and a need to provide adequate service to the public in accordance with the company's obligation as a FCC licensee.

When questioned by the Board, concerning the company having worked with the neighborhood, the representative responded by saying he didn't believe so. When questioned about whether he had provided the Land Use Planner with specific information regarding coverage and the existence of a gap, Mr. Schweigard acknowledged that he had not shared that information with the Land Use Planner because it is considered confidential by the company.

Speaking in opposition to the proposal, abutters and other persons expressed concerns about:

- Sprint's lack of contact or cooperation with the neighborhood;
- Sprint's failure to exhaust alternative solutions;
- The impact of the tower on the neighborhood visually and on property values;
- The potential health risk;
- Sprint's failure to give adequate notice to affected property owners of the hearing;
- Sprint's failure to make the case for additional antennae and equipment at the South Union Street location and
- Sprint's failure to seek out alternative, less obtrusive, locations.

When questioned by the Board, Mr. Schweigard acknowledged that he had not considered other locations. When questioned by the Board regarding steps that might be taken to mitigate the visual impact on the neighborhood e.g. with screening or trees, Mr. Schweigard suggested that it might be possible to utilize a less obtrusive mounting.

The Board members told the Sprint representative that they had not heard enough information from Sprint regarding coverage versus capacity; documentation regarding a coverage problem and alternative locations for siting the antennae and related equipment.

The opinion expressed by various Board members was that if the petition were to be voted on, it would be denied. At that point in the proceedings, the Petitioner's representative requested a continuance in order to allow him time to provide the Board with the information requested and to prepare himself to address the concerns expressed

by Board members and those present at the hearing. By a 5-0 vote the Board agreed to continue the hearing to February 26, 2004.

Mr. Schweigard appeared at the February 25, 2004 meeting of the Board. He described the issues previously raised as centering on proof of need and the visual impact of the proposed installation. He told the Board that he was prepared to show the Board a different mounting plan which is less intrusive and provide research on other possible locations.

He pointed out that the continued existence of the pole is not an issue; that it was designed for three antennae assemblies and that neighboring areas, at lower elevations, might be screened by planting full sized trees.

Mr. Schweigard then introduced Raymond Kim, an engineer employed by Sprint, who exhibited a map illustrating existing sites and what he represented as major coverage deficiencies. He also showed a radio frequency map and explained how data is collected; showed areas of "dropped calls" and showed area of proposed enhanced coverage.

Mr. Kim assured the Board that radio frequency radiation is a risk only at the same elevation and within 10 feet of the source. In order to experience a risk at 88' (the height at which the equipment would be installed on the pole) a person would have to be located at that height and within ten feet of the pole.

Addressing the visual intrusion objection, Mr. Schweigard proposed as an alternative to the present triangular platform utilized by Nextel the use of smaller antennae cluster, mounted flush on the pole surface.

He also told the Board that he had submitted a request to his company asking them to consider paying the cost of planting full sized trees to screen the site. However, Sprint had declined the request because of the precedent it would establish.

Several persons then voiced their objection to the petition on grounds that Sprint's application was deficient because the abutter's list was incorrect and therefore some abutter were not correctly notified.

One speaker challenged the coverage maps provided by the petitioner's representative. Another speaker raised the safety issue in the event that a hurricane should topple the pole.

Mr. Schweigard responded by explaining the address issue and suggesting that the result was that more not fewer abutters were notified using the 672 South Union Street address for the tower.

Mr. Kim also defended the accuracy of the data he had provided. As regards to the structural integrity of the pole, Mr. Kim acknowledged that he was not a structural engineer but based his statements on information that these poles have the capacity to withstand 200 MPH winds.

The Board, after viewing the site, reviewing the Petitioner's application and plan and the recommendation from the Land Use Planner and after a public hearing, voted 5-0 to deny the Petitioner's request for Special Permit under section 29-11B having been unable to make all four findings that:

1. the traffic generated by the use will not be detrimental to the neighborhood;
2. the use will not be detrimental to the area in which it is to be located;
3. the use will not result in any objectionable fumes, noise, chemical spills or hazardous wastes and
4. the hours of operation are compatible with the uses in the neighborhood.

The twenty-day appeal process was explained as noted below:

**APPEALS**

Appeals to this decision shall be made pursuant to MGL Chapter 40A, Section 17, and shall be filed within twenty days after the filing date of this notice in the office of the City Clerk.

THIS DECISION WAS FILED WITH THE CITY CLERK ON 4/5/04.

Signed:

_____    _____
FRANCIS A. AUDY                              RICHARD CONSOLI
CHAIRMAN                                      VOTING MEMBER

_____    _____
GAYLE E. WILLIAMS                            JOSEPH SIROIS
VOTING MEMBER                                VOTING MEMBER

_____
KEMAL BOZKURT
ASSOCIATE VOTING MEMBER

# ZONING BOARD OF APPEALS

# LAWRENCE #3168 MASSACHUSETTS



*Voting Members*
Richard P. Consoli  Gayle Williams
April Lyskowsky  Joseph F. Sirois
*Associate Voting Members*
Kemal Bozkurt

*Chairman*
Francis A. Audy

*Administrative Assistant*
Anne-Marie Nyhan-Doherty
*Land Use Planner*
William J. Maloney

**RECEIVED**
AUG 2 0 2004
CITY CLERK

## NOTICE OF DECISION

CASE NO.: 3168

DATE OF HEARING: June 24, 2004 (continued from May 27, 2004)

PETITIONER/APPLICANT: Omnipoint Holdings, Inc., 50 Vision Blvd., E. Providence, RI

PREMISES AFFECTED: 672 South Union St.

Referring to: The above request for a Variance from Section 29-17(o)(2)(e)(5)(A), 29-17(o)(2)(e)(5)(B), 29-17(o)(2)(e)(6), and 29-17(o)(2)(e)(7) and a Special Permit in accordance with Section 29-11(B) and 29-17(o)(2)(f)(2) of the Revised Zoning Ordinances of the City of Lawrence for the co-location of a wireless facility on the existing telecommunication tower on a parcel known as 672 South Union St. which is located in an I-2 zoning district.

After a public hearing on the above-mentioned date, the Zoning Board voted (5-0) to grant the request for the Special Permit and Variances as described above and the Board hereby authorizes the Building Inspector to issue a permit to the petitioner subject to the conditions as specified within the Statement of Facts and to the plan on file with the Zoning Board. This permit may only be issued upon completion of the requisite twenty (20) days appeal period and only after proof of recording of this Notice of Decision and Statement of Facts at the North Essex Registry of Deeds is submitted to the City Clerk and the Building Inspector.

THIS DECISION WAS FILED WITH THE CITY CLERK ON 8/20/04.

I hereby certify that twenty (20) days have expired and no appeal has been filed.

Signed:

FRANCIS A. AUDY
CHAIRMAN

RICHARD CONSOLI
VOTING MEMBER

GAYLE WILLIAMS
VOTING MEMBER

APRIL LYSKOWSY
VOTING MEMBER

JOSEPH SIROIS
VOTING MEMBER

A TRUE COPY
ATTEST
_____
City Clerk

## ZONING BOARD OF APPEALS

*Voting Members*
Richard P. Consoli  Gayle Williams
April Lyskowsky  Joseph F. Sirois
*Associate Voting Members*
Kemal Bozkurt



*Chairman*
*Francis A. Audy*

## LAWRENCE MASSACHUSETTS

*Administrative Assistant*
Anne-Marie Nyhan-Doherty
*Land Use Planner*
William J. Maloney

### STATEMENT OF FACTS

| | |
|---|---|
| CASE NO. | 3168 |
| DATE OF HEARING: | June 24, 2004 (continued from May 27, 2004) |
| PETITIONER/APPLICANT: | Omnipoint Holdings, Inc., 50 Vision Blvd., E. Providence, RI |
| PREMISES AFFECTED: | 672 South Union St. |

A meeting of the Zoning Board of Appeals was held in the City Council Chambers, City Hall, 200 Common St., Lawrence, MA, commencing at 7:00 PM on June 24, 2004. Present and voting on this application were Francis A. Audy, Chairman, Richard Consoli, April Lyskowsky and Gayle Williams, and Joseph Sirois, Voting Members.

Pursuant to public notice in the Lawrence Eagle Tribune, a newspaper of general circulation in the City of Lawrence, published on May 13th and 20th, 2004 and pursuant to notice sent by mail, postage prepaid to the petitioner and owners of all property deemed by the Board to be affected thereby, as they appear on the most recent tax list, a public hearing was held on the application/petition of Omnipoint Holdings, Inc. The property is located in an I-2 zoning district.

On April 14, 2004, J. Robert Quimby, Commissioner of Buildings for the City of Lawrence, denied the request presented by or on behalf of the applicant for approval of a plan for the co-location installation of telecommunications equipment on an existing telecommunications tower on a parcel known as 670-672 South Union Street which is located in an I-2 Industrial Zone.

The Commissioner determined that a Special Permit to install the telecommunications equipment is required from the Zoning Board of Appeals pursuant to section 29-11B and Section 29-17(o)(2)(f)(2). The Commissioner further indicated that a Variance from the applicable provisions of the Revised Zoning Ordinance is required for the following reasons:

*Section 29-17(o)(2)(e)(5)(A) – the proposed wireless facility has less than the required 30 feet setbacks.

*Section 29-17(o)(2)(e)(5)B – the proposed wireless facility is within 1,000 feet of a school or residential zone.

*Section 29-17(o)(2)(e)(6) – the proposed wireless facility has no security fencing.

*Section 29-17((o)(2)(e)(7) – the proposed wireless facility site does not provide for the minimum of 10% landscaping.

On April 26, 2004, a petition requesting the Board to issue a Special Permit and grant certain Variances was filed by or on behalf of the applicant with the City Clerk. The submission was accompanied by a plan of the proposed wireless co-location installation along with supporting documentation which included: a Radio Frequency Coverage Plot, and Existing Site Map, an Affidavit of Radio Frequency Engineer, an Alternative Site Analysis, a Structural Analysis, an FCC License, Photo simulations, Removal Estimate, a Deed evidencing the name of the owner of the site location, a certified Abutter's List, a detailed narrative stating the applicant's position and reasons supporting the petition, and a design plan of installation for review.

On May 27, 2004, at a meeting of the Zoning Board of Appeals the applicant was represented by Amy White who told the Board that the abutters had been notified and invited to contact the company regarding the proposal but no inquiries had been forthcoming.

According to Ms. White, the applicant proposes to install (9) panel antennas at a centerline height of 81 feet on the existing 100-foot tower located at 670-762 South Union Street. The antennas will be connected to three equipment cabinets via co-axial cables. The equipment cabinets and utility connections will be placed on a concrete pad adjacent to the existing tower.

The installation requires only electric and telephone utilities and once completed will require, on average, one to two monthly maintenance visits by qualified company technicians. No water, sewer or other municipal services will be required.

According to the spokesperson, other alternative sites were considered. However, the proposed site under consideration is the most appropriate location and utilizes an existing pole constructed in 1998.

Ms. White elaborated by saying that there is a need to provide coverage within this section of Lawrence. Presently there are more than 500 dropped calls each day. The spokesperson added that this situation needed to be remedied and that even with the addition of this site and another, which will come before the Board at a later date, coverage will not be complete. The Board was told that there is a public safety issue involved where, among the calls dropped, there may be 911 emergency calls.

Speaking in opposition to the proposal, an interested person told the Board of an incident in Oswego, New York where a similar pole collapsed on a fire truck and suggested that there should be a free fall zone but that, in the instant case there were homes within a short distance from the pole. The issue of radiation hazard was also raised.

In turn, the Omnipoint representative responded that: the pole was designed to accommodate three installations; the engineering of the pole took that into account; the tower will withstand winds of 90 MPH and the testimony on radiation is not from an expert.

At this point in the proceedings, the spokesperson requested a continuance in order to bring in a structural engineer to testify as to the integrity of the pole.

On June 24, 2004, at a meeting of the Zoning Board of Appeals Amy White, on behalf of the applicant, presented a report regarding the effect of the T-mobile installation on property values in the immediate area as well as the structural integrity of the pole.

Testimony was received by the Board, which indicated that wind speeds of 237 MPH could cause buckling of the pole. However, that same wind speed would move wood framed structures off their foundations. The Board was also told that similar towers, similarly situated, have had no adverse effect on property values.

Dan Haes, a radiation safety specialist and an independent consultant, speaking on behalf of the applicant told the Board that radio field measurements for the proposed installation complied with FCC regulations, including both the existing and proposed installation, based on full operation. His conclusion was that there was no risk to residents of the area.

Frank Bakis, P.E. was questioned by the Board about the structural integrity of the pole in the event of winds of 237 MPH. He conceded that circumstance could cause a failure of the pole. However, he described this as an extraordinary event that would also blow buildings off their foundations and that 155 MPH hurricanes, not higher winds, would cause buildings, such as the residential dwellings in the subject area, to fail.

Abutters raised issues involving the effort to find alternative locations; property values; health issues and the collapse of the pole caused by a vehicle hitting the pole.

In response, Amy White told the Board that the area is fenced off and that alternative locations were considered and that the abutters had provided only anecdotal evidence whereas the applicant had addressed the requests of the Board for expert testimony.

When asked for his observations and the recommendations of the Planning Board, William J. Maloney, the City Land Use Planner, responded by saying that although the finding requirements of Section 29-21(a) may be met concerning the applicant's request for the issuance of a Special Permit to install co-location telecommunications equipment as presented, the issue for the Board to consider is whether on not it can enter the required

findings to grant the Variances requested in accord with the provisions of Section 29-34 of the Revised Zoning Ordinance.

Mr. Maloney suggested that even if the Board determines that the provisions of the first paragraph of section 29-34 of the ordinance has been satisfied by the applicant, the Board should also consider the required findings referenced in the second and third paragraphs of Section 29-34; i.e.: (2) that desirable relief may be granted without substantial detriment to the public good and (3) that desirable relief may be granted without nullifying or substantially derogating from the intent or purpose of such ordinance.

Continuing, Mr. Maloney told the Board that in its determination, the Board may wish to reference the "purpose and intent" provisions of the ordinance that specifically address telecommunications installations and facilities as provided by Section 29-17(o)(1) which provides as follows:

Purpose and intent

> This Article is enacted in order to establish general regulations for the siting of telecommunications and wireless facilities, in all Zoning Districts where permitted, and to enhance and fulfill the following goals:
>
> Preserve the authority of The City of Lawrence to regulate and to provide for reasonable opportunity for the siting of telecommunications facilities.
>
> Reduce adverse impacts such facilities may create, including, but not limited to impacts on aesthetics, environmentally sensitive areas, historically significant locations, flight corridors, health and safety by injurious accidents to personal property, and prosperity through reasonable protection of property values.
>
> Provide for co-location and minimal impact siting options through an assessment of technology, current locations options, future available locations, innovative siting techniques and siting possibilities beyond the political jurisdiction of the City of Lawrence.
>
> Permit the construction of new telecommunications and wireless facilities only when all other reasonable opportunities have been exhausted, and encourage the configuration of new facilities to minimize the adverse visual impact.
>
> Require co-location of antennae, to the highest extent and density possible, in order to reduce the cumulative negative impacts upon the City of Lawrence.
>
> Provide for the removal of abandoned telecommunications and wireless facilities.
>
> Preserve the authority of the Building Department of the City of Lawrence to conduct an inventory of existing telecommunications and wireless facilities as necessary.

Continuing, Mr. Maloney told the Board that the determination of the Board regarding the request presented in its application may rest on factors that directly relate to the use of the location as a "co-location" site with particular regard to the required findings provide by Section 29-34 of the ordinance in relation to the "intent" of the "telecommunications regulations" provided in Section 29-17 of the Revised Zoning Ordinance.

The City Planner elaborated by telling the Board that among the findings required of the Board pursuant to section 29-21(A) is a determination that the proposed use will not be detrimental to the area in which it is to be located. (See; Section 29-21(A)(2)). The Board will be asked to consider whether or not the proposed installation of telecommunications equipment at the tower co-location as proposed is a "detriment" to the area. The proposed installation of telecommunications equipment subject to this application occurs in an area of South Lawrence (east) designated as I-2 (General Industrial). Although this area has the technical designation as an I-2 location, the site immediately borders a "Local Business District" (B-1) and "Residential Districts" (R-1/R-2/R-3/R-4) which are densely populated. This portion of South Union Street serves as a main access road and thoroughfare to route 495 through which many residents and visitors travel. The area also borders a residential section of Andover, which has expressed serious opposition to the applicant's petition for a variety of reasons.

According to Mr. Maloney, the provisions of Section 29-24 also apply to this application and govern the procedure the Board must follow in its task of reaching a determination on the applicant's request for a Special Permit. In particular, the applicable standards are delineated in Section 29-24(e) and call upon the Board to consider the location and size of the use, the nature and intensity of the operations involved, the size of the site in relation to the use, the location, nature and height of proposed and existing buildings and structures, the effect of the proposed use on adjacent land and buildings and to specific findings for a determination that the proposed use is in harmony with the intent and purpose do this ordinance. In addition, the Board is required to make findings which address the issues of concern as stated in subsections (f) and (g) of Section 29-24, if applicable, and to provide reasons for the determination reached.

Among the provision of Section 29-24(f) and (g), the Board should be aware that the particular use involved must not create any observable nuisance or effect beyond the boundary of the lot that is more intense than that of a permitted principal use in the district. (See: Section 29-24(g)(2)).

In order to render its decision and required findings, the Board may consider and rely upon any sources of information provided by the applicant, information provided by another board, or by any other person, and may also consider and rely upon all studies, standards, guidelines or similar information available within or without the City of Lawrence which addresses the subject matter presented.

Mr. Maloney concluded his remarks by saying that the Planning Board believes that the required findings of Section 29-21(A) may be considered and reached by the Board in this

instance. There does not appear to be any change or alteration of use proposed by the petitioner that is any different in kind or nature than already appears at this site.

The determination of the Board regarding the request for a Variance pursuant to the provisions of Section 29-34 concerning the required findings to be entered are matters within the discretion of the Board.

If the Board decides to grant the "Special Permit" and "Variance" requested by the applicant, it is suggested that the Board may wish to provide the following three conditions concerning this matter:

1. The applicant and the current title owner of the real property where the telecommunications equipment is to be installed shall prepare and record a lease agreement detailing the authorization of the applicant's use of the owner's property to include, without limitation, the date entered, the date of expiration, the terms of use, the terms of entry onto the property by the applicant, the terms relating to the assigned responsibility for the installation, construction, maintenance of any and all equipment, materials, and landscaping requirements on the site. Said lease agreement shall be prepared and recorded with the Essex North Registry of Deeds prior to any construction and/or installation of any equipment of any kind or nature by the applicant and no later than 90 days from the last date of the appeal set for any decision of the Zoning Board of Appeals. Further, the applicant shall provide a signed duplicate original copy of the lease agreement to the City of Lawrence Planning Office prior to recording with the registry of deeds as provided herein.

2. The applicant shall be responsible for the design, installation, construction of security fencing at the site and that any proposed construction and installation of any security fencing be represented on a site plan Mylar or sepia to be reviewed and approved by the Land Use Planner prior to installation no later than 90 days from the last date of the appeal set for any decision of the Zoning Board of Appeals.

3. The applicant shall post a "guarantee bond" pursuant to the requirements of Section 29-27(o)(2)(g) in an amount of no less than $10,621.76 payable to the City of Lawrence for the removal of any telecommunication's equipment of the applicant appearing at the site location which may be determined or found to be "abandoned" in accord with the provisions of Section 29-17(o)(2)(h). Any and all determinations that said property of the applicant is "abandoned" shall be solely and exclusively determined by the Building Commissioner of the City of Lawrence, Massachusetts or his designated agent without recourse to the applicant or any other person, entity, or individual acting at the direction of the applicant. The applicant shall execute such documents and agreements that shall "release, indemnify and hold harmless" the City of Lawrence, Massachusetts, its agents and employees, from any claim, suit, cause of action, or complaint for the removal and/or disposal of any and all telecommunications equipment installed by or at the

direction of the applicant that m may have been determined or found to be abandoned.

Mr. Maloney then told the Board that based upon the foregoing discussion and suggestions; the Planning Board leaves it to the discretion of the Board to determine this matter.

The Board after a review of the Petition, considering the comments of the Land Use Planner, and after public hearing, voted 5-0 to approve the request for Special Permit and Variance subject to the above-described three conditions having found that:

1. The traffic generated by the use will not be detrimental to the neighborhood.
2. The use will not be detrimental to the area in which it is to be located.
3. The use will not result in any objectionable fumes, noise, chemical spills or hazardous wastes.
4. The hours of operation are compatible with the uses in the neighborhood.

The Board also specifically found and gave reasons therefore of all of the following:

1. That owing to circumstances relating to the shape of such land, buildings and structures and especially affecting such land, buildings or structures, but not affecting generally the zoning district in which it is located, a literal enforcement of the dimensional provisions of the ordinance would involve substantial hardship, financial or otherwise, to the petitioner.

2. That desirable relief may be granted without substantial detriment to the public good; and

3. That desirable relief may be granted without nullifying or substantially derogating from the intent or purpose of such ordinance.

The twenty-day appeal process was explained as noted below:

## APPEALS

Appeals to this decision shall be made pursuant to MGL Chapter 40A, Section 17, and shall be filed within twenty days after the filing date of this notice in the office of the City Clerk.

## EFFECTIVE DATE

Pursuant to Section 29-24 (j) of the 1998 Revised Zoning Ordinance, a special permit shall not be in effect until recorded at the Essex County Registry of Deeds at the expense of the applicant.

Pursuant to Section 29-34 (d) of the 1998 Revised Zoning Ordinance, the decision of the Board regarding variances shall not be in effect until recorded at the Essex County Registry of Deeds at the expense of the appellant.

Omnipoint Holdings, Inc.
ZBA #3168 – 6-24-04

Proof of such recording shall be submitted to the City Clerk and Building Inspector by the applicant, petitioner or appellant.

THIS DECISION WAS FILED WITH THE CITY CLERK ON 8/20/04.

Signed:

_____  _____
FRANCIS A. AUDY            RICHARD CONSOLI
CHAIRMAN                   VOTING MEMBER

_____  _____
GAYLE WILLIAMS             APRIL LYSKOWSY
VOTING MEMBER              VOTING MEMBER

_____
JOSEPH SIROIS
VOTING MEMBER